Lynwood J.R. **HERRING**, Plaintiff,

v.

**PRINCE FOODS–CANNING DIVISION**, Defendant.

Civ.A. No. 84–3680.

United States District Court, D. New Jersey.

June 12, 1985.

Joseph Asbell & Associates, P.A. by Joseph Asbell, Camden, N.J., for plaintiff.

Robert J. Borrelle, Haddon Heights, N.J., Morgan, Brown & Joy, by William F. Joy, Jr., Laurence J. Donoghue, Boston, Mass., for defendant.

GERRY, District Judge.

The plaintiff was an employee of the defendant. On March 8, 1983, plaintiff was injured during the course of his employment. Shortly thereafter, Mr. Herring began receiving workmen's compensation benefits. On July 12, 1984, the complaint alleges, the defendant was notified by plaintiff's doctor that plaintiff could return to work on August 1, 1984. On July 16, 1984, however, the defendant sent plaintiff a telegram informing him that he had been discharged. (The defendant alleges that it had earlier communicated this information via registered mail—in mid-June, prior to learning of plaintiff's intention to return to work—but that plaintiff had not picked up the letter, and it had been returned unopened.) From the time plaintiff first left work until his discharge, he was out of work approximately 16 months.

During his employment with Prince Foods, the plaintiff was a member of the Prince Employees' Union, and his relationship with Prince Foods was covered by a series of collective bargaining agreements. The agreement in effect at the time of plaintiff's accident provided that Prince could discharge employees for "just and proper cause." On August 1, 1983, a new agreement went into effect. This agreement also contained a "just cause" provision. It also contained the following provision:

> An employee's seniority shall terminate and he shall no longer be considered an employee upon....
>
> Absence of 12 consecutive months in the case of an industrial illness or accident arising out of or in the course of employment with the employer herein.

The defendant relied on this provision in discharging the plaintiff. The plaintiff alleges, however, that his discharge was actually in retaliation for his having collected workmen's compensation benefits.

The plaintiff has filed a six count complaint. The plaintiff alleges in count one that the retaliatory discharge is violative of N.J.S.A. 34:15–39.1, which makes it unlawful to discharge an employee because he has claimed or attempted to claim workmen's compensation benefits.[1] Count two is substantially identical to count one and alleges in more general terms that the re-

---

1. The section provides the remedies of restoration to employment and recovery of lost wages. It further provides, however: "if such employee shall cease to be qualified to perform the duties of his employment, he shall not be entitled to such restoration and compensation."

taliatory discharge "is contrary to the clear mandate of public policy." (No other public policy than that evinced by 34:15–39.1 is proposed.) Count three alleges that the termination is violative of N.J.S.A. 34:15–44, a provision limited by its terms to public employees. Count four is a claim under 42 U.S.C. § 1983, and count five likewise is a generalized claim of constitutional deprivations. Finally, count six is a demand for punitive damages.

The defendant has moved for summary judgment on all six counts of the complaint.

The defendant argues that counts four and five of the complaint should be dismissed because there was no state action implicated in the decision to discharge plaintiff. The plaintiff now concedes the point, and these counts, therefore, will be dismissed. The plaintiff also concedes that N.J.S.A. 34:15–44 is inapplicable, as he was not a public employee, and this count will also be dismissed.

That leaves counts one and two. Initially, the court must address briefly the question of subject matter jurisdiction, since the federal constitutional claims have been dismissed. Ordinarily, federal jurisdiction in an employer-employee dispute where there is in place a collective bargaining agreement may be grounded in § 301 of the Labor-Management Relations Act (LMRA). Here, however, the plaintiff's suit is not based on any collective bargaining agreement; indeed, it is predicated on the availability of extra-contractual causes of action. Accordingly, § 301 does not furnish the jurisdictional basis for suit. It would appear, however, that the court may exercise diversity jurisdiction over counts one and two. Although the face of the complaint does not demonstrate diversity, the later submissions of the parties satisfy the court that diversity exists, and the court will proceed on that basis.

In *Lally v. Copygraphics*, 85 N.J. 668, 428 A.2d 1317 (1981), the New Jersey Supreme Court held that an employee who has been discharged in retaliation for claiming workmen's compensation benefits has a common law right of action for wrongful discharge. The cause of action for wrongful discharge had been recognized by the court the previous year in *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505 (1980).

The defendant agrees that a violation of N.J.S.A. 34:15–39.1 gives rise to an action pursuant to *Pierce*. But, the defendant argues, *Pierce* only provides a remedy for at-will employees, otherwise unprotected against discharged, and has no application to employees covered by a collective bargaining agreement. Employees of the latter category, it is argued, must pursue their contractual remedies and resort initially to arbitration if the contract so provides.

We first address the applicability of the *Pierce* wrongful discharge doctrine to the plaintiff, an employee covered by a collective bargaining agreement. The *Pierce* court held that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." 84 N.J. at 72, 417 A.2d 505. The court stated that such a cause of action could be maintained in contract—predicated on the breach of an implied provision prohibiting the discharge of an employee who refused to perform an act that violates public policy—or in tort—based on a duty of the employer not to discharge an employee under such circumstances. *Id.* Under the latter theory, punitive damages are available. *Id.*

The decision in *Pierce* involved an at-will employee, and the entire discussion leading up to the holding dealt with the need to provide some protections for at-will employees; that is, employees who could be terminated with or without cause at any time, due to the absence of contractual provisions restricting termination to "just cause" or otherwise providing a definite term of employment. The decision is predicated, it seems, on the *absence of any other remedies* for this class of employees and the realization that, in limited circumstances, there must be limits to an employer's authority over its employees.

Thus, courts (albeit not yet the courts of New Jersey) have frequently held that the existence of a *statutory* remedy for redress of a violation of public policy (for example, race or sex discrimination) precludes the injured employee from asserting a common law wrongful discharge claim. *See, e.g., Bonham v. Dresser Industries*, 569 F.2d 187, 195 (3d Cir.1977); *Wehr v. Burroughs Corp.*, 438 F.Supp. 1052, 1054 (E.D.Pa.1977); *Wolk v. Saks Fifth Avenue*, 728 F.2d 221 (3d Cir.1984).

The defendant argues that, likewise, the existence of a *contractual* remedy bars the employee from asserting the common law claim. It appears that the New Jersey Supreme Court has not yet addressed this issue, and so we must predict what its decision would be.

■ Taking into account the premises on which *Pierce* is based, this court agrees that one whose employment is governed by a collective bargaining agreement *prohibiting discharge except for "just cause"* may not invoke the common law cause of action. Such an employee is not in need of the protections established in *Pierce*, because he already has these protections, and more. "Just cause," whatever else it incorporates, is surely broad enough to incorporate a prohibition on terminations violative of clear mandates of public policy; i.e., retaliatory terminations.

Moreover, to permit one to maintain an action for wrongful discharge may allow the employee to circumvent the procedures for dispute resolution which the parties to the agreement have bargained for. *Cf. Bruffett v. Warner Communications*, 692 F.2d 910, 919 (3d Cir.1982) (rejecting wrongful discharge claim, where to permit claim would allow one to circumvent the statutory remedy). In the instant case, the collective bargaining agreement contains a grievance procedure culminating in arbitration. The employer, we believe, has a right to rely on that procedure, exclusive of any other, for any disputes arising under the agreement.

The plaintiff argues, however, that the language of *Pierce* should be read to permit a wrongful discharge claim even where there exists a contract remedy. Reliance is placed on the following statement:

Our holding [recognizing the cause of action] should not be construed to preclude employees from alleging a breach of the express terms of an employment agreement.

84 N.J. at 73, 417 A.2d 505.

This statement, the court believes, cannot be read as expansively as plaintiff would have it. The employee in *Pierce* was not covered by a collective bargaining agreement. The opinion alludes to the possible existence of an oral contract, and not a contract providing for arbitration. The statement in *Pierce* may simply be a statement of the obvious: that one may plead, in the alternative, a claim of wrongful discharge along with a claim for breach of an express contract. Where there is no alternative (let alone, exclusive) remedy, the employee will be bringing both claims to court in the first instance. The *Pierce* court provides no guidance on how a court should dispose of these multiple claims, assuming both are valid and coextensive. It may be that relief should be granted on both theories, or it may be that the common law wrongful discharge claim should be dropped.

Alternatively, the *Pierce* court may have been recognizing that one may have an express contract which gives one certain protections, against termination perhaps, but protections different from those recognized in *Pierce* itself. For example, one may be an at-will employee having a contract covering salary or accrued commissions. "A breach of this agreement may be separately recognized as a basis for compensatory damages, even under *Pierce*, notwithstanding that plaintiff's discharge must be upheld if he does not meet the *Pierce* abusive discharge test." *Cappiello v. Ragen Precision Industries*, 192 N.J.Super. 523, 471 A.2d 432, 435–36 (App.Div. 1984). Similarly, one may be covered by a collective bargaining agreement providing that one may not be terminated for certain specific acts, but otherwise not restricting

the employer's authority to discharge. If one were terminated for an act beyond those specifically protected by the agreement, one should still be permitted to bring suit pursuant to *Pierce* and bypass what would only be an irrelevant set of grievance procedures provided under the agreement. However, if one were terminated in violation of public policy for an act also specifically protected by the agreement, the court believes one would have resort only to the remedies provided in the agreement. The crucial factor under *Pierce*, we believe, is the absence of other remedies. *See Smith v. Greyhound Lines*, 614 F.Supp. 558, 117 L.R.M. 2253 (W.D.Pa. 1984) (same result, under Pennsylvania law); *Bertrand v. Quincy Market*, 728 F.2d 568 (1st Cir.1984) (same result, under Massachusetts law).

Having concluded that plaintiff's claim is for breach of an express contract prohibiting termination absent "just cause," we must determine whether that claim must be dismissed for failure to exhaust extrajudicial remedies. We will assume, in the discussion that follows, that the complaint has been properly amended to reflect that plaintiff is proceeding on this basis, under § 301.

The defendant argues that the complaint must nevertheless be dismissed, as the August, 1983 agreement (and its predecessor) provides for the arbitration of all grievances (including discharges) arising out of the agreement. There can be no doubt that the courts favor arbitration, and that in most circumstances § 301 actions cannot be brought prior to exhaustion of arbitration procedures.

 The plaintiff makes a couple of arguments against the exhaustion requirement here. First, it is argued, there is a question whether the provision of the August, 1983 agreement permitting termination after twelve months of illness should apply retroactively to illnesses, such as plaintiff's, preceding the inception of that contract. The plaintiff questions the

arbitrator's capacity to decide this question.

However, based on the allegations of the plaintiff's complaint, the arbitrator may not—should not—reach this question. If the discharge was, in the arbitrator's judgment, retaliatory and the reason proffered was merely pretextual, then the retroactivity question would not arise, and the arbitrator would simply fall back on the "just cause" standard. If the arbitrator were to find that the reason proffered was the actual reason for discharge, only then would he have to address the temporal scope of the new provision, but an agreement's scope is clearly an issue an arbitrator can decide, absent strong indications to the contrary. The arbitrator might well decide not to apply the new provision, and again simply fall back on the "just cause" standard.

The plaintiff next argues that the new provision permitting termination after twelve months of illness is void and unenforceable as violative of public policy, and that an arbitrator, if called upon to apply the provision, would be unable, within the scope of his authority, to declare it void. This is probably correct, as the agreement states that the arbitrator "shall have no ... power to nullify, delete, or add to the provisions of this Agreement."

Here, then, there may be some ground for permitting the plaintiff to bypass arbitration, as the contract *does not* provide an *alternative remedy* for the setting aside of the discharge allegedly in violation of public policy. Yet, while there would be no "jurisdictional" bar to the bringing of this claim here in the first instance,[2] it would seem appropriate nevertheless to stay any consideration of this claim until the completion of arbitration, which could well obviate the need for judicial resolution. The arbitrator might find, after all, that the discharge provision was irrelevant to the employer's decision. We note, of course, that the complaint, as presently drafted, only alleges retaliation, not an employer reliance on an unenforceable provision. According-

2. *But see* footnote 3, *infra.*

ly, there is nothing in the complaint to survive dismissal anyway.[3]

We find plaintiff's remaining arguments concerning the unavailability of grievance procedures unmeritorious.

For all the reasons stated above, the motion for summary judgment will be granted. The accompanying order will be entered.

---

**3.** We take no position, of course, on whether the provision in question indeed violates public policy. *But see Galante v. Sandoz, Inc.,* 192 N.J.Super. 403, 470 A.2d 45 (Law Div.1983); *aff'd,* 196 N.J.Super. 568, 483 A.2d 829 (App.Div.1984) (suggesting no violation of N.J.S.A. 34–15:39.1 under analogous circumstances). We further note that plaintiff's union agreed to the provision, which factor may also figure in any consideration of public policy. Finally, because this particular allegation is not part of the instant complaint, we need not decide whether such a claim would be preempted by federal labor law. If preemption were appropriate, however, it might be that the proper vehicle for challenging the provision would be through an action to vacate an arbitration award (subject to the limits on vacation of awards contrary to public policy). *See Kane Gas Light v. IBF & O,* 687 F.2d 673, 681–82 (3d Cir.1982).