**William McFADDEN, Plaintiff,**

v.

**Richard BURTON, Brook Williams, Richard Dickes, Dr. John K. Eshleman and Celebrity Limousine Service, Inc., a corporation of the Commonwealth of Pennsylvania, Defendants.**

Civ. A. No. 85–882.

United States District Court,
E.D. Pennsylvania.

Aug. 13, 1986.

Thomas R. Uliase, Cherry Hill, N.J., for plaintiff.

Mark Alderman, Philadelphia, Pa., for Burton's Estate, and Williams.

Mark Gurevitz, Philadelphia, Pa., for Celebrity, Dickes and Eshleman.

## MEMORANDUM AND ORDER

DITTER, District Judge.

All defendants in this diversity action have moved for summary judgment. For reasons that follow, the motions of all defendants except Celebrity Limousine Service are granted. The motion of Celebrity Limousine Service is granted in part and denied in part.

Plaintiff suffers from a congenital defect that has resulted in the shortening of his left leg. In June, 1983, he began driving and performing promotion work for defendant Celebrity Limousine Services, Inc., which is owned by defendants Richard Dickes and John K. Eshleman. Plaintiff was to be paid $200 per week plus fifteen percent of the gross receipts Celebrity secured from plaintiff's efforts.

In July, 1983, the production company for the play *Private Lives* retained Celebrity to provide limousine services while the play was running in Philadelphia. Plaintiff was assigned to meet certain members of the company, including Richard Burton and Brook Williams, at 30th Street train station and drive them to the Palace Hotel. Two days later, on July 19, 1983, plaintiff drove Williams and Sally Burton, Burton's wife, to a supermarket, where he helped his passengers carry packages to the car. Later that same day, plaintiff drove Burton, Mrs. Burton, and Williams to other stores and returned them to the hotel.

Plaintiff alleges that on July 20, 1983, Dickes told him that he would be reassigned from the Burton job, but would continue to drive for the rest of the production company. He further alleges that Williams asked Celebrity to remove plaintiff as the driver for the Burton job because the party was embarrassed to have a person who walked with a limp carrying packages for them. According to plaintiff, Burton said that he, his wife, and Williams did not feel comfortable riding with a handicapped driver, and then requested that Dickes not allow the media to know of his dissatisfaction with plaintiff.

Plaintiff continued to drive for Celebrity until August 15, 1984, when he was told by Dickes that business was slow and that the company could not afford to pay him a salary.

Plaintiff then filed this nine-count action in the United States District Court for the District of New Jersey. The complaint alleges that Burton[1] and Williams published statements that were slanderous *per se* and made with the intent to humiliate plaintiff and cause him emotional distress. It further alleges that Burton and Williams unjustifiably interfered with plaintiff's right

---

1. Richard Burton passed away in August, 1984. A suggestion of death was filed in this case on April 29, 1985, and Burton's Estate has been substituted as a defendant in this action.

to pursue a lawful business, plaintiff's prospective business advantage, and plaintiff's contractual rights. As against Dickes, Eshleman, and Celebrity, plaintiff alleges claims sounding in wrongful discharge, breach of contract and negligent failure to investigate or perform a proper evaluation of plaintiff. Finally, plaintiff advances a claim against all defendants under the New Jersey law against discrimination.

On motion of the individual defendants, the Honorable Maryanne Trump Barry transferred the matter to this court, finding that the New Jersey district court could not exercise personal jurisdiction over the individual defendants and that the interests of justice warranted transfer.

■ My first task in resolving these motions is to determine whether Pennsylvania or New Jersey choice-of-law provisions apply to the various counts of plaintiff's complaint. Ordinarily, when an action is transferred from one district to another, the transferee court is to apply the choice-of-law rules of the state of the transferor court. *VanDusen v. Barrack,* 376 U.S. 612, 638–39, 84 S.Ct. 805, 820–21, 11 L.Ed.2d 945 (1964). However, where a transfer is effected because the transferor court lacks jurisdiction over the defendant, the transferee court is to apply the choice-of-law provisions of the state in which the transferee court is held. *See, e.g., Roofing and Sheet Metals Services v. La Quinta Motor Inns, Inc.,* 689 F.2d 982, 991–93 (11th Cir.1982); *Ellis v. Great Southwestern Corp.,* 646 F.2d 1099 (5th Cir.1981); *Reyno v. Piper Aircraft Co.,* 630 F.2d 149, 165 (3d Cir.1980), *rev'd on other grounds,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). When a case involving multiple defendants is transferred, the transferee court must distinguish among those defendants over whom the transferor court could and could not properly exercise jurisdiction. *See Reyno,* 630 F.2d at 164.

■ In transferring the matter to this court, Judge Barry stated that the individual defendants were not subject to the *in personam* jurisdiction of the court. Celebrity did not move to dismiss the complaint for lack of personal jurisdiction and does not assert now that New Jersey lacked jurisdiction over it. Consequently, Pennsylvania choice-of-law provisions will apply to the claims asserted against the individuals and New Jersey choice-of-law provisions will apply to the claims against Celebrity.

### Tort Claims against Burton's Estate and Williams

The Third Circuit has observed that with respect to tort cases Pennsylvania employs a flexible methodology to choice-of-law problems which combines the "most significant relationship" test espoused in the Restatement (Second) of Conflicts and the "interest-analysis" approach attributed to Professor Currie. *See Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1311–13 (3d Cir.1978) (citing *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964)). Under this approach, the court should take "into account both the grouping of contacts with the various concerned jurisdictions and the interests and policies that may be validly asserted by each jurisdiction." *Id.* at 1311. Judge Broderick has summarized this method as follows:

> 'Interest' analysis involves a qualitative appraisal of the relevant states' policies with respect to the controversy before the court so that the court may determine the state which has the most significant interest in the dispute. The Restatement (Second) examines the totality of the contact which each state has with various portions of the controversy, counting and weighing those contacts in order to determine which state possesses the 'most significant relationship' with the dispute.

*Savitt v. City of Philadelphia,* 557 F.Supp. 321, 322–23 (E.D.Pa.1983).

■ With respect to the tort claims against Burton's Estate and Williams, it is clear that Pennsylvania has the most significant factual relationship to the dispute. In this case, plaintiff's employment with Celebrity was centered in Pennsylvania.

Celebrity's engagement by the *Private Lives* production company occurred in Pennsylvania. The trips plaintiff undertook on behalf of Celebrity for transportation of the Burton party took place exclusively in Pennsylvania. The alleged statements giving rise to the tort actions were claimed to have been both uttered and heard in Pennsylvania.

■ The only relevant New Jersey contacts are plaintiff's domicile,[2] his alleged conversation with an individual named Gary Burr about working for Celebrity, and the driving of limousines by McFadden and Celebrity on other occasions. On balance, I believe it is clear that Pennsylvania has the most significant relationship to the issues involved in these counts.

Plaintiff has failed to articulate with respect to these counts how New Jersey law differs from Pennsylvania law or how New Jersey interests would be thwarted by the application of Pennsylvania law in this case. Therefore, because Pennsylvania has the most significant factual relationship and plaintiff has failed to show how a New Jersey interest would be frustrated, Pennsylvania law will be applied to the tort claims against Burton's estate and Williams. *See Denenberg v. American Family Corp.*, 566 F.Supp. 1242, 1251 (E.D.Pa. 1983) (where parties failed to state difference between laws of two states, forum law would be applied).

*Slander*

Turning to the parties' substantive contentions, defendants argue that even if one accepts as true plaintiff's allegations that Burton and Williams made the statements to Dickes, plaintiff cannot maintain a defamation action based on them. Plaintiff testified that he had heard from Dickes that both Burton and Williams asked Dickes to replace McFadden as the Burton party chauffeur. Dickes allegedly told plaintiff that Williams asked to have McFadden taken off the job because he felt embarrassed about having a person who limped carrying packages in front of or behind him. McFadden deposition at 62, 64, 127 & 132. According to plaintiff, Burton told Dickes that he, his wife, and his secretary did not feel comfortable riding with a handicapped driver. *Id.* at 64 & 134.

Defendants argue that plaintiff has failed to meet his burden of proving the defamatory character of the alleged statements. Procedurally, the question whether a statement is capable of a defamatory meaning is one for the court to decide. *Marcone v. Penthouse International Magazine for Men*, 754 F.2d 1072, 1078 (3d Cir.1985).

Under Pennsylvania law, a statement is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 442, 273 A.2d 899, 904 (1971) (quoting *Cosgrove Studio and Camera Shop, Inc. v. Pane*, 408 Pa. 314, 318, 182 A.2d 751, 753 (1962)). The threshold determination of whether a statement is capable of defamatory meaning depends on the general tendency of the words to have such an effect. *Corabi*, 441 Pa. at 442, 273 A.2d 899.

Plaintiff asserts that defendants' alleged statements are defamatory because they can be construed to "directly impact on plaintiff's ability to work and be a chauffeur." Memorandum of Law in Opposition to the Motions of Defendants for Summary Judgment at 26. To the extent the alleged statements can be construed to mean that defendants believe plaintiff is unqualified to perform chauffeuring services, it takes the form of an opinion.

---

**2.** The plaintiff's domicile is a critical factor in defamation cases where the alleged defamotory statements were published in more than one state. *See Fitzpatrick v. Milky-Way Productions, Inc.*, 537 F.Supp. 165, 171 (E.D.Pa.1982). However, plaintiff's domicile plays a subordinate role to the place of publication in cases where, as here, publication has occurred in one state only. *See Denenberg v. American Family Corp.*, 566 F.Supp. 1242 (E.D.Pa.1983); Restatement (Second) Conflicts of Laws § 149.

■ A defamatory communication may consist of a statement of opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as to the basis for that opinion. *See* Restatement (Second) of Torts § 566 (1977). However, an "expression of opinion based on disclosed or assumed non-defamatory facts is not itself sufficient for an action of defamation, *no matter how unjustified and unreasonable the opinion may be or how derogatory it is."* *Id.* comment c. *See also Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339, 94 S.Ct. 2997, 3006, 41 L.Ed.2d 789 (1974).

■ Plaintiff does not contend the alleged opinion stems from anything other than plaintiff's handicap and defendants' embarrassment or discomfort with it. Dissecting the bases for the opinion, it is clear that the statement is not defamatory. First, it is undisputed that plaintiff suffers from a shortening of the leg that forces him to walk with a limp. Second, defendants' statements about their embarrassment cannot be considered defamatory. A statement of one's visceral or emotional reaction to a non-defamatory fact concerning the plaintiff cannot be considered defamatory, no matter how unreasonable that reaction may have been. As with opinions, society must depend on the ability of individuals to decide whether one's emotional reaction to a given or disclosed fact or set of facts is reasonable or unreasonable and should not resort to the courts for that purpose. Therefore, because neither predicate underlying the alleged opinion was capable of a defamatory meaning and plaintiff has not claimed there are additional, undisclosed defamatory facts underlying the opinion, summary judgment is granted in favor of defendants on Count IV of the complaint.

*Unjustifiable Interference with Contractual Relations, Prospective Business Advantage, and Rights to Pursue a Lawful Business*

In Count III of the complaint, plaintiff purports to state a cause of action for intentional interference with contractual relations. In Count II, plaintiff alleges intentional interference with prospective business advantage. Pennsylvania has elected to follow section 766 and 766B of the Second Restatement of Torts in defining such causes of action. *See Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 430, 393 A.2d 1175, 1182 (1978) (section 766); *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174, 177–78 (1974) (tentative draft to section 766B). While my research reveals no discrete tort in Pennsylvania for intentional interference with the right to pursue a lawful business, the allegations in the complaint make it clear that this purported claim would be covered either by section 766 or section 766B, if at all.

Both section 766 and 766B require intentional and improper interference. The "actor must act (1) for the purpose of causing this specific type of harm to the plaintiff, (2) such act must be unprivileged, and (3) other harm must actually result." *Adler, Barish,* 482 Pa. at 430, 393 A.2d at 1182.

Williams and Burton's Estate argue that plaintiff cannot show that the alleged statements were made for the purpose of causing the termination of plaintiff's employment with Celebrity. Plaintiff responds by asserting that it is inappropriate to resolve questions of intent on a motion for summary judgment.

■ Plaintiff's response goes too far; merely because state-of-mind is difficult to prove and requires great circumspection on summary judgment, does not mean that a party against whom summary judgment is sought is entitled to a trial simply because state-of-mind is an element in the cause of action he has asserted. *See Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). The question which must be asked is whether plaintiff can point to anything in the record from which a permissible inference of intent to interfere can be said to arise.

■ Plaintiff relies exclusively on the alleged statements of Burton and Williams as being probative of their intent. Stated simply, I do not believe that a jury reasonably could infer an intent on the part of Burton or Williams to have plaintiff discharged from Celebrity or precluded from future driving opportunities simply from their alleged requests to have plaintiff replaced as their driver. Therefore, summary judgment will be granted against plaintiff and in favor of Burton's Estate and Williams with respect to Counts I, II, and III.

*Intentional Infliction of Emotional Distress*

■ The elements of the tort of intentional infliction of emotional distress are: 1) the conduct must be extreme and outrageous, 2) the conduct must be intentional or reckless, 3) the conduct must cause emotional distress, and 4) the distress must be severe. *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979); *Denenberg v. American Family Corp.*, 566 F.Supp. 1242, 1251 (E.D.Pa. 1983). It is the responsibility of the court to determine whether a defendant's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery. *Dawson v. Zayre Department Stores*, 346 Pa.Super. 357, 499 A.2d 648, 649 (1985).

■ If the statements were in fact made, they would certainly evince a callous and insensitive attitude on the part of Burton and Williams. However, callousness and insensitivity are insufficient to support a claim for intentional infliction of emotional distress. The claimed conduct must be "so outrageous in character and extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Chuy*, 595 F.2d at 1273. Comment d to section 46 of the Second Restatement of Torts provides insight concerning the scope of the tort of intentional infliction of emotional distress:

The rough edges of our society are still in need of a good deal of filing down, and in the meantime, plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind.

Restatement (Second) of Torts § 46 comment d (1965). *See, e.g., id.* illustration 4 (no liability where in course of argument with telephone operator defendant calls operator "a God damned woman, a God damned liar, and says that if he were there he would break her God damned neck ..."); *id.* § 46 comment f, illustration 13 (no liability where defendant, knowing plaintiff's sensitivity about a weight problem, calls her a hippopotamus).

The Pennsylvania Superior Court has held that the utterance of certain insulting language does not give rise to a cause of action for intentional infliction of emotional distress. In *Dawson v. Zayre Department Stores*, 346 Pa.Super. 357, 499 A.2d 648 (1985), a store employee became embroiled in an argument with plaintiff, a customer in the store, and called plaintiff a "nigger." The trial court granted defendant's motion to dismiss the intentional infliction of emotional distress claim. A divided panel of the superior court affirmed, stating that although the utterance of the word was offensive, it did not amount to the required level of extreme and outrageous conduct. *Id.* 499 A.2d at 649. While defendant used the offensive language in *Dawson* in the course of an argument, which may have presented a mitigating factor, *see* Restatement (Second) of Torts § 46 comment d (1965), the case is strongly suggestive of Pennsylvania's unwillingness to impose tort liability for the making of an insulting reference.

■ On balance, therefore, I conclude that plaintiff has failed to show that defendants engaged in conduct that could reasonably be considered extreme and outrageous, and I will grant summary judgment in favor of defendants and against plaintiff on Count V of the complaint.

*Claims Under the New Jersey Law Against Discrimination*

Plaintiff argues that the New Jersey Law Against Discrimination, N.J.Stat.Ann. § 10:5–4.1 (West Supp.1986), provides him with a cause of action against Burton's Estate and Williams. Plaintiff overlooks, however, that the New Jersey Act will only provide the rule of decision if Pennsylvania would choose to apply it. Therefore, a choice-of-law analysis must be performed.

Section 10:5–4 of The Law Against Discrimination provides in pertinent part:

> All persons shall have the opportunity to obtain employment ... without discrimination because of race, creed, color, national origin, ancestry, age, marital status or sex, subject only to conditions and limitations applicable to all persons. This opportunity is recognized as and declared to be a civil right.

Section 10:5–4.1 extends the provision of the act to preclude "any unlawful discrimination against any person because such person is or has been at any time handicapped or any unlawful practice against such person, unless the nature and extent of the handicap reasonably precludes the performance of the particular employment."

Under the New Jersey statutory framework, a person claiming to be a victim of discrimination may file a complaint with the Attorney General or proceed directly with a civil action in court. N.J.Stat.Ann. § 10:5–12 (West Supp.1986).

Pennsylvania addresses discrimination on the basis of handicap through the Pennsylvania Human Relations Act, 43 Pa.Stat. Ann. §§ 951 *et seq.* (Purdon 1964 & Supp. 1986). In section 952, the legislature has recognized a handicapped person's right to obtain employment for which he is qualified. Section 955(a) of the Act provides that it is "an unlawful discriminatory practice, unless based upon a bona fide occupational qualification ... [f]or any employee because of ... non-job related handicap or disability of any individual to refuse to hire or employ, or to bar or discharge from employment such individual...."

Unlike New Jersey, however, Pennsylvania does not allow a plaintiff to proceed directly with a civil action seeking redress for employment discrimination based on handicap. In *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910 (3d Cir.1982), the court of appeals held that a victim's exclusive remedy for this type of conduct is provided by the administrative mechanism set forth in the Pennsylvania Human Relations Act.

For purposes of the choice-of-law analysis, I will assume that the New Jersey Act provides plaintiff with a cause of action against Burton's Estate and Williams. However, looking at the overwhelming factual contact with Pennsylvania, the paucity of contact with New Jersey, and Pennsylvania's interest in applying its substantive law in this instance, I predict the Pennsylvania Supreme Court would not apply the New Jersey statute.

First, as previously noted, virtually all the contact with respect to the claims against Burton's Estate and Williams took place in Pennsylvania. Second, Pennsylvania's governmental interest would be frustrated by applying New Jersey law in this court. Relegating discrimination claims to the procedures under the Pennsylvania Human Relations Act serves at least two purposes. First, the Act allows an allegedly discriminating person to conciliate discrimination claims outside the antagonistic setting of civil litigation. *See Pennsylvania Human Relations Commission v. United States Steel Corp.*, 458 Pa. 559, 325 A.2d 910 (1974); *Murphy v. Pennsylvania Human Relations Commission*, 77 Pa. Cmwlth. 291, 465 A.2d 740, 746 (1983). Second, by vesting jurisdiction over discrimination claims in the Human Relations Commission, the legislature has created a tribunal which has expertise in that field. *See Smith v. Anchor Motor Freight Co.*, 428 F.Supp. 21 (M.D.Pa.1976).

The policy of fostering conciliation and addressing discrimination claims in a specialized body would be frustrated if this cause of action were permitted in a Penn-

sylvania court through the application of New Jersey law. While New Jersey has an interest in having its discrimination victims compensated for their injuries, I believe that the Pennsylvania Supreme Court would select Pennsylvania substantive law due to the strong Pennsylvania contacts and interests. Consequently, the New Jersey Law Against Discrimination will not be applied to plaintiff's claims against Burton's Estate and Williams.

■ To the extent plaintiff's claims are covered by the Pennsylvania Human Relations Act, they are dismissed since they may be maintained only before the Human Relations Commission. *See Bruffett*, 692 F.2d at 910. To the extent the Human Relations Act does not cover the allegations directed toward Burton's Estate and Williams in Count IX, plaintiff has not identified Pennsylvania substantive law making discrimination, itself, actionable. Therefore, summary judgment will be entered against plaintiff and in favor of Burton's Estate and Williams on Count IX of the complaint.

### Claims against Celebrity

As previously stated, New Jersey choice-of-law rules will be used to determine the appropriate law with respect to plaintiff's various claims against Celebrity.

### Breach of Contract Claim

In contract cases, New Jersey applies the law of the place where the contract is made, "unless the dominant and significant relationship of another state to the parties and the underlying issues dictates that this basic rule should yield." *State Farm Mutual Automobile Insurance Co. v. Estate of Simmons*, 84 N.J. 28, 37, 417 A.2d 488 (1980). *See also Cessna Aircraft Co. v. Fidelity and Casualty Co.*, 616 F.Supp. 671, 676 (D.N.J.1985). Application of the

general rule is said to comport with the expectation of the parties. *State Farm*, 84 N.J. at 37, 417 A.2d 488.

■ In this case, the materials of record show that discussions concerning plaintiff's employment with Celebrity took place in Pennsylvania, and that if a contract were in fact formed, it was formed in Pennsylvania. Furthermore, Celebrity is a Pennsylvania corporation with its only place of business in Pennsylvania. Plaintiff performed his duties out of this Pennsylvania office. The only New Jersey contacts that are relevant are plaintiff's New Jersey domicile, Gary Burr's conversation with plaintiff about working at Celebrity, and occasional Celebrity engagements in New Jersey. These limited contacts hardly can be said to provide New Jersey with the dominant and significant relationship with the parties so as to overcome the general rule applying the law of the place of contracting.

■ Therefore, Pennsylvania law will be applied to this count. Plaintiff contends that he had a contract with Celebrity for a period of time and that Celebrity breached this agreement by discharging him. Plaintiff's complaint, however, does not allege a contract for a specific time. In his deposition, he stated that he had an express oral contract for "as long as he lived" or "as long as Celebrity was in business." McFadden dep. at 77–78. The Third Circuit has stated, however, that under Pennsylvania law promises such as these for " 'a permanent' and 'lifetime' employment are too vague to create employment for a term." *Murray v. Commercial Union Insurance Co.*, 782 F.2d 432, 435 (3d Cir. 1986) (citations omitted). Consequently, plaintiff's breach of contract claim is dismissed.[3]

---

**3.** Dr. Eshleman and Mr. Dickes were also named as defendants on this count. However, plaintiff alleged that his contract was with Celebrity, not Eshleman or Dickes. *See* Complaint ¶ 29. Therefore, Eshleman and Dickes could not have breached the contract.

To the extent plaintiff contends that the complaint can be construed to allege tortious interference with contractual relations on the part of Eshleman and Dickes, this argument is rejected. *See infra* note 4.

Therefore count VII of the complaint will be dismissed as against Eshleman and Dickes.

*Discrimination Based on Handicap*

■ Plaintiff next contends that he was unlawfully discriminated against on the basis of his handicap. In determining what law to apply to the handicap-discrimination claim, I must first decide what New Jersey choice-of-law provision should guide me in the selection of the appropriate law. In a very general sense, an act of discrimination results in personal injury to the victim of that discrimination. *Cf. Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 1948, 85 L.Ed.2d 254 (1985) (state-law personal injury statute of limitations provides the applicable limitations period under 42 U.S.C. § 1983, in part because causes of action under section 1983 result from personal injuries). Therefore, I will look to New Jersey's tort choice of law provisions to decide which state's law should provide the standards for this claim.

With respect to tort claims, New Jersey follows a governmental-interest approach. *See Henry v. Richardson-Merrell, Inc.,* 508 F.2d 28, 32 (3d Cir.1975); *Pfau v. Trent Aluminum Co.,* 55 N.J. 511, 263 A.2d 129 (1970); *Mellk v. Sarahson,* 49 N.J. 226, 229 A.2d 625 (1967). Under this approach, the court first determines the government policies evidenced by the laws of each pertinent jurisdiction and then assesses the factual contacts between the parties and each pertinent jurisdiction. *See Henry,* 508 F.2d at 32. In *Henry,* the Third Circuit summarized:

> A state is deemed interested only where application of its law to the facts in issue will foster that state's policy. This approach does not count up contacts and make quantitative determinations of interest based on which state has the greatest number of contacts. Instead, the qualitative nature of contacts is considered so that only contacts which are

likely to promote valid state policies are considered relevant.

*Id.* (footnote and citation omitted).

Plaintiff again urges the court to apply the New Jersey Law Against Discrimination. Not surprisingly, Celebrity urges the court to apply the Pennsylvania Human Relations Act. As previously stated, the New Jersey scheme allows a discrimination victim to elect whether to press his claim in court or before an executive agency, whereas the Pennsylvania scheme only provides redress before an agency.

As also previously mentioned, the Pennsylvania interests in fostering conciliation and resolving discrimination claims before a specialized body are implicated in this case. New Jersey has an interest in compensating New Jersey citizens who are the victims of discrimination.

■ I have held that New Jersey choice-of-law provisions apply to the claims against Celebrity. While application of Pennsylvania choice-of-law precepts may have yielded the selection of Pennsylvania law, the opposite result obtains through the application of New Jersey law. This is so simply because of the weight New Jersey has accorded to compensating its citizens in the tort context. The Third Circuit has noted that, with respect to torts, the New Jersey courts have "almost uniformly applied New Jersey law in instances in which the state had a significant compensation interest, *viz.,* where the plaintiff was a New Jersey domiciliary." *Schum v. Bailey,* 578 F.2d 493, 496 (3d Cir.1978).

Therefore, because the New Jersey Law Against Discrimination will be applied, and there is a genuine question of material fact as to liability under this statute, defendant's motion for summary judgment on Count IX will be denied.[4]

4. Dr. Eshleman and Mr. Dickes were also named as defendants on this count. With respect to these defendants, Pennsylvania, rather than New Jersey, choice-of-law precepts apply. As with the claims against Burton's Estate and Williams, I predict that the Pennsylvania Supreme Court would not apply the New Jersey Law Against Discrimination to the claims against these individuals.

Therefore, count IX of the complaint will be dismissed as against Eshleman and Dickes.

*Wrongful Discharge*

Both New Jersey and Pennsylvania have expressed willingness to extend causes of action on behalf of certain at-will employees for wrongful discharge. *See, e.g., Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 417 A.2d 505 (1980) (an employee may have a cause of action for wrongful discharge when the discharge is contrary to public policy); *Geary v. United States Steel Corp,* 456 Pa. 171, 319 A.2d 174 (1974) (same).

In this case, plaintiff alleges that he was discharged on account of his handicap, and therefore, that he was wrongfully discharged. As the preceding discussion illustrates, Pennsylvania would not allow this claim to be brought directly to court; instead plaintiff would have to proceed before the PHRC. *See Bonham v. Dresser Industries,* 569 F.2d 187, 195 (3d Cir.1977); *Wehr v. Burroughs Corp.,* 438 F.Supp. 1052, 1054 (E.D.Pa.1977).

█ In New Jersey, it is at least an open question whether a former employee may assert a common-law claim for wrongful discharge when the basis for that dismissal is itself a violation of the New Jersey Law Against Discrimination. I am given guidance in this regard, however, by Judge Gerry's opinion in *Herring v. Prince Foods,* 611 F.Supp. 177 (D.N.J.1985), where he stressed that a crucial factor underlying a claim for wrongful discharge is the absence of other remedies. *Id.* at 181. I am in accord with Judge Gerry's reasoning. Moreover, because there already exists a

statutory remedy for plaintiff, it would be inappropriate for me, sitting in diversity, to extend New Jersey law to provide a common-law cause of action where none has yet been recognized by New Jersey's courts.

Consequently, because I predict that both Pennsylvania and New Jersey would bar a wrongful-discharge claim in this case, count VI will be dismissed.[5]

*Negligent Failure to Investigate*

█ Plaintiff claims that Celebrity wrongfully discharged him without properly investigating whether his handicap actually prevented him from being able to perform his duties as a chauffeur. Plaintiff has failed to offer any evidence that Celebrity agreed with him that it would not discharge him without first performing a proper evaluation that would reveal plaintiff's inability to perform. Moreover, under Pennsylvania and New Jersey law, an at-will employee has no right to insist on an investigation of his performance prior to discharge.

This ruling does not withdraw plaintiff's argument from consideration, however. To the extent plaintiff contends he was discharged due to his handicap, but a proper investigation would have revealed his fitness to perform, his contention may be considered in connection with the claim under the New Jersey Law Against Discrimination. Nonetheless, count VIII of the complaint is dismissed to the extent that it purports to state a separate cause of action.[6]

---

**5.** Dr. Eshleman and Mr. Dickes were also named as defendants on this count. I believe the reasoning applied to the claim against Celebrity is equally applicable as against the individuals.

While plaintiff contends that his complaint can be construed to plead tortious interference with contractual rights, this theory fails to withstand scrutiny. In *Murray v. Commercial Union Ins. Co.,* 782 F.2d 432, 437 (3d Cir.1986), the court of appeals rejected this identical argument under Pennsylvania law. The court stressed that the only Pennsylvania decision to embrace such a tortious interference theory, *Yaindl v. Ingersoll-Rand Co.,* 281 Pa.Super. 560, 422 A.2d 611 (1980), found that the tort claim was indis-

tinguishable from the tort of wrongful discharge. Consequently, the Third Circuit saw the argument before it as an attempt to circumvent the rule limiting tort actions for wrongful discharge to those situations where no Pennsylvania statute provides a remedy. *Murray,* 782 F.2d at 437.

Plaintiff has not argued how New Jersey law differs in this respect. Therefore, summary judgment will be entered in favor of Dr. Eshleman and Mr. Dickes on count VI of the complaint.

**6.** Dr. Eshleman and Mr. Dickes were also named as defendants on this count. Plaintiff has failed to identify any Pennsylvania or New Jersey authority that requires an employee, offi-

---

cer, or director of a corporation to perform a work evaluation of an employee prior to the company's discharging him.

Therefore, count VIII of the complaint will be dismissed as against Eshleman and Dickes.