Melvin **KAHLE**, Administrator of the Estate of Adella Curry, Appellant,

v.

**GLOSSER BROTHERS, INC.**

No. 71–1659.

United States Court of Appeals,
Third Circuit.

Argued May 25, 1972.

Decided June 16, 1972.

**816**

James A. Ashton, Pittsburgh, Pa., for appellant.

William R. Tighe, Stein & Winters, Pittsburgh, Pa., for appellee.

Before STALEY, ALDISERT, and HUNTER, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

This is an appeal by Melvin Kahle, administrator of the estate of Adella Curry, from an order of the District Court, 326 F.Supp. 985, granting appellee Glosser Bros., Inc.'s motion for summary judgment in a suit brought by Kahle under the Wrongful Death and Survival Acts of Pennsylvania.[1]

On April 3, 1967, decedent, Adella Curry,—a resident of West Virginia at the time of her death—and her daughter, Catherine Curry, were shopping in the Glosser store in Johnstown, Pennsylvania. After having selected various groceries and before arriving at the checkout counter, the daughter decided to return two items—namely, the butter and the cheese—to the shelves. She did so. The ladies paid for their other purchases, left the store and proceeded to their car in Glosser's parking lot. As the daughter was entering the driver's seat, Glosser's female security officer grabbed her right arm and demanded the return of the butter and the cheese. Miss Curry replied that the items had been returned and invited the security officer to search her pockets and belongings. After so "searching" Miss Curry, the officer followed a similar procedure with the decedent, who had remained silent during this initial exchange. Nothing was discovered. Although the officer started to walk away, the daughter apparently prolonged the encounter, indicating in no uncertain terms what she thought of the detective's unfounded accusations. A heated argument ensued between the two and while it was in progress, the mother—a few feet away and upset by the incident—fell to the ground and died instantly of a coronary occlusion. According to the treating

---

1. 12 P.S. § 1601, et seq. and 20 P.S. § 320.601, et seq.

physician, her death was a direct result of the general excitement of the event.[2]

Until the Pennsylvania Supreme Court's decision in Niederman v. Brodsky, 436 Pa. 401, 261 A.2d 84 (1970), the "impact rule" was well established in Pennsylvania and pursuant to that doctrine, recovery was not allowed for any injury resulting from fright or other emotional trauma unaccompanied by an actual physical impact. E. g., Bosley v. Andrews, 393 Pa. 161, 142 A.2d 263 (1958); Koplin v. Louis K. Liggett Company, 322 Pa. 333, 185 A. 744 (1936). However, the inequities of the doctrine were readily apparent and the "impact rule" was subsequently held to bar recovery only in those cases where there was no "impact" whatsoever. Potere v. Philadelphia, 380 Pa. 581, 112 A. 2d 100 (1955).

The doctrine, at least in its most expansive form, was further eroded in *Niederman, supra,* where the Pennsylvania Supreme Court held:

> "We today choose to abandon the requirement of a physical impact as a precondition to recovery for damages proximately caused by the tort in only those cases like the one before us where the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff actually did fear the physical impact." 436 Pa. at 413, 261 A.2d at 90.

■■ Thus, recovery in the instant case would be allowed if either (1) a negligent "impact" were shown—no matter how slight or (2) if the decedent was in personal danger of a negligent physical impact and where she was in actual fear of the impact, *Niederman, supra,* 436 Pa. at 413, 261 A.2d 84.[3] The District Court concluded that the events leading to the decedent's death did not fall within either of the above categories. We agree.

■ Initially, the *only* physical contact between the detective and the decedent was the detective's search of the latter's pockets and belongings. In light of our examination of the relevant depositions, we agree with the District Court's conclusion that the store detective was, in fact, justified in believing that the decedent had consented to the search. See e. g., Dicenzo v. Berg, 340 Pa. 305, 16 A.2d 15 (1941). As the record discloses no other touching of the decedent's person, recovery cannot therefore be predicated on the pre-*Niederman* cases cited above.

■■ Second, the record adequately supports the District Court's finding that decedent's emotional distress was not traceable to a fear of physical harm created by the store detective and "that the act of searching was not an act intended to put decedent in a reasonable apprehension of an immediate battery." Thus, the *Niederman* exception is of no assistance to appellant.[4]

The order of the District Court will be affirmed.

2. Decedent had been under the care of a physician for a number of years prior to her death for a heart condition, namely, "hypertensive cardiovascularitis."

3. No evidence was introduced by appellant to indicate that decedent's emotional distress was the result of the wanton or intentional misconduct of the security officer. Such a showing would be an additional basis for recovery. Papieves v. Kelly, 437 Pa. 373, 263 A.2d 118 (1970).

4. It is also settled in Pennsylvania that words or threats alone are insufficient to put a person in reasonable apprehension of physical injury or offensive touching. Cucinotti v. Ortmann, 399 Pa. 26, 159 A.2d 216 (1960). See also Hoffman v. Rhoads Construction Co., 113 Pa.Super. 55, 172 A. 33 (1934).