499 A.2d 648

**Roseann DAWSON, Appellant,**

v.

**ZAYRE DEPARTMENT STORES.**

Superior Court of Pennsylvania.

Argued June 18, 1985.

Filed Oct. 18, 1985.

Joseph J. Chester, Pittsburgh, for appellant.

Edward D. Klym, Pittsburgh, for appellee.

Before ROWLEY, OLSZEWSKI and DEL SOLE, JJ.

DEL SOLE, Judge:

Roseann Dawson appeals from an order granting appellee's preliminary objections in the nature of a demurrer and dismissing the complaint.

In April 1983, Appellant entered Zayre's Department Store intending to pick up a lay-away item. She became involved in a dispute with a store employee over the lay-away ticket. During the argument, the employee called the Appellant a "nigger". Appellant filed a complaint in trespass alleging that she suffered severe emotional distress as a result of this incident: wounded feelings; humiliation; physical harm; and that she cried and was unable to gain her composure for one-half hour. On June 12, 1984 the trial court granted Appellee's preliminary objections in the nature of a demurrer. We affirm.

Appellant argues that the lower court erred in holding that her complaint failed to establish a cause of action. The lower court held that Appellee's actions did not rise to the level of extreme and outrageous conduct required to sound in tort.

Liability for intentional infliction of emotional distress is limited to those cases in which the conduct complained of is extreme and outrageous. *Jones v. Nissenbaum, Rudolph and Seidner*, 244 Pa.Super. 377, 368 A.2d 770 (1976). Further, it is for the court to determine, in the first instance, whether the defendant's conduct can reasonably be regarded as so extreme and outrageous so as to permit recovery. Restatement (Second) of Torts, § 46, comment (h) (1965).

Conduct which does not meet the requisites for liability is described in comment (d) of the Restatement (Second) of Torts § 46:

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other triviliaties. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be

hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

We would find that the conduct outlined in Appellant's Complaint does not possess the degree of severity that is necessary to establish a cause of action. Although we by no means condone the derogatory and offensive language used by Appellee's employee, and while we understand Appellant's rightful resentment, we believe that this conduct merely constitutes insulting namecalling from which no recovery may be had. The Restatement cites the following example:

4. A makes a telephone call but is unable to get his number. In the course of an altercation with the telephone operator, A calls her a God damned woman, a God damned liar, and say that if he were there he would break her God damned neck. B suffers severe emotional distress, broods over the incident, is unable to sleep, and is made ill. A's conduct, although insulting, is not so outrageous or extreme as to make A liable to B.

Restatement (Second) of Torts, supra, § 46, comment (d) illustration 4. Similarly in this case, the Complaint alleges that a dispute arose with regard to a layaway ticket. In the course of the dispute Appellee's employee called Appellant a "nigger". Although this word is insulting and abusive, taken in this context it does not amount to the type of extreme and outrageous conduct which gives rise to a cause of action. Clearly the law cannot serve to redress all indignities. An Illinois court has held under similar circumstances that the plaintiff failed to state a cause of action for intentional infliction of emotional distress. In *Irving v. J.L. Marsh, Inc.*, 46 Ill.App.3d 162, 4 Ill.Dec. 720, 360 N.E.2d 983 (1977) the plaintiff sought to return merchandise and to

obtain a refund. An employee of the retail store wrote on the refund slip which he handed to the plaintiff: "arrogant nigger refused exchange/says he doesn't like product". The court found that the employee's conduct was insufficient to support a valid cause of action. The dismissal of a count in a complaint which attempted to state a cause of action for intentional infliction of emotional distress was also affirmed in *Lay v. Roux Laboratories, Inc.*, Fla.App., 379 So.2d 451 (1980). In that case, an employee of Roux Laboratories who was responsible for administering and policing parking spaces for the company's employees called plaintiff a "nigger" when an argument arose concerning a parking space. The court held that the employee's conduct did not reach such level of outrageousness and atrociousness as to serve as a predicate for the independent tort of intentional infliction of emotional distress. Likewise, the Court of Appeals in *Bradshaw v. Swagerty*, 1 Kan.App.2d 213, 563 P.2d 511 (1977), upheld a decision refusing to recognize a cause of action when during a heated argument over a debt collection the defendant called the plaintiff a "nigger", a "bastard", and a "knot-headed boy". The court noted that the trial court was fully justified in regarding the epithets complained of as mere insults.

This is not a case involving continuous malicious actions. *See: Bartanus v. Lis*, 332 Pa.Super. 48, 480 A.2d 1178 (1984). Nor, is this a case where there was a special relationship between the parties. *See:* Restatement (Second) of Torts, supra, § 48. Likewise the situation described herein is not one in which the actor knew of the other's susceptibility to emotional distress, by reason of some physical or mental condition or peculiarity. *See:* Restatement (Second) of Torts, supra, § 46, comment (f); *Zalnis v. Thoroughbred Datsun Car Co.*, —— Colo.App. ——, 645 P.2d 292 (1982). Rather, this case involves a party who during the course of a disagreement characterized another with an offensive term. The law does not invoke liability in a situation where, without other aggravating circumstances,

one hurls an epithet at another during the course of a disagreement.

None of the cases cited by the dissent is based on a situation similar to the one found in the instant case. Although three of the cited cases involve a suit dealing with the offensive nature of spoken words, in each of those cases other aggravating circumstances accompanied the insults. No such aggravating circumstances were alleged by Appellant in her complaint.

In *Alcorn v. Anbro Engineering*, 2 Cal.3d 493, 86 Cal. Rptr. 88, 468 P.2d 216 (1970), the plaintiff alleged that defendants who where "standing in a position or relation of authority over plaintiff, aware of his particular susceptibility to emotional distress ... intentionally humiliated plaintiff, insulted his race, ignored his union status, and terminated his employment, all without just cause of provocation." 86 Cal.Rptr. at 90, 91, 468 P.2d at 218, 219. The Supreme Court of California in *Alcorn* stated: "Although it may be that mere insulting language, without more, ordinarily would not constitute extreme outrage, the *aggravated circumstances* alleged by plaintiff seem sufficient to uphold his complaint as against defendant's general demurrer." 86 Cal.Rptr. at 97, 468 P.2d at 219 (emphasis added). Aggravated circumstances can also be found in the case of *Ruiz v. Bertolotti*, 37 Misc.2d 1067, 236 N.Y.S.2d 854 (1962). Therein, plaintiffs' complaint asserted that defendant expressed his anger at "colored persons" moving into the neighborhood, and threatened bodily harm to the home builder, to plaintiffs, and to plaintiffs' children if the sale of the house was consummated. Plaintiffs further alleged that fear of their personal safety and that of their children caused them to rescind the contract of sale. Similarly, in *Fisher v. Carrousel Motor Hotel, Inc.*, (Tex.) 424 S.W.2d 627 (1963), the defendant's loud and offensive words were accompanied by conduct which the court found to constitute a battery. The court specifically held that the "plaintiff was entitled to actual damages for mental suffering due to the willful battery". 424 S.W.2d at 630.

The remaining cases cited by the dissent do not involve a situation where one party refers to another with an offensive term. These cases all deal with plaintiffs who were refused service or admittance in defendant's establishments because of their race. These cases can be further distinguished based on their individual holdings. In *Odom v. East Avenue Corp.*, 178 Misc. 363, 34 N.Y.S.2d 312 (1942) recovery was based on the defendant's special duty as an innkeeper. *See:* Restatement (Second) Torts, *supra* § 48, comment (a). In *Amos v. Prom Inc.*, 115 F.Supp. 127 (N.D.Iowa 1953); it was held that a jury would be permitted to award exemplary damages; however, the court therein specifically relied on defendant's alleged illegal conduct in violating the Iowa Civil Rights Statute. Violation of the public accommodation statute, RWC 9.91.010(2), was alleged in *Browning v. Slenderella Systems of Seattle*, 54 Wash.2d 440, 341 P.2d 859 (1959). The *Browning* court held that the plaintiff had a cause of action under the public accommodation law to recover damages for injuries to her feelings, even though the statute was criminal in form. The court also found that the evidence failed to establish that plaintiff suffered severe emotional distress since defendant's discriminatory conduct did not occur in the presence of others.

Unlike the above cited cases, the circumstances alleged here merely involve one party who during the course of a dispute speaks to another in an "opprobrious, insulting and abusive manner". In this case, the speaker apparently lost her temper and resorted to namecalling. However unfortunate it may have been, conduct such as that engaged in by Appellee's employee is not so extreme and outrageous as to give rise to a cause of action for intentional infliction of emotional distress.

Appellant also argues that the court below improperly dismissed her complaint under a theory of special liability of owners of public places, RESTATEMENT (SECOND) TORTS, § 48 (1965). We agree with the trial court that

special liability under Section 48 has not been extended to conduct affecting an ordinary business invitee.

Accordingly, we conclude that the Appellee's preliminary objections were properly sustained since Appellant failed to state a cause of action for intentional infliction of emotional distress.

Order affirmed.

OLSZEWSKI, J., dissents.

OLSZEWSKI, Judge, dissenting:

I respectfully dissent. In my opinion the majority has adopted an anachronistic position and I would allow this case to proceed to trial.

In considering preliminary objections in the nature of a demurrer, we must consider whether, on the facts averred, the law says with certainty that no recovery is possible. *Bartanus v. Lis*, 332 Pa.Super. 48, 52, 480 A.2d 1178, 1180 (1984) (per Rowley, J.) A demurrer admits all well-pleaded material facts set forth in the complaint, as well as all inferences reasonably deducible therefrom. *Id.* A demurrer may be sustained only where a case is free from doubt. *Id.* Accepting as true all well-pleaded factual allegations in the instant complaint, it is sufficient to sustain an action for the intentional infliction of emotional distress.

An action for the intentional infliction of emotional distress has been recognized in Pennsylvania. *See Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970); *Bartanus v. Lis*, 332 Pa.Super. 48, 480 A.2d 1178 (1984); *Jones v. Nissenbaum, Rudolph, and Seidner*, 244 Pa.Super. 377, 368 A.2d 770 (1976); *see also Wisniewski v. Johns-Manville Corp.*, 759 F.2d 271 (3d Cir.1985). In *Papieves*, our Supreme Court, relying in part on Section 46 of RESTATEMENT (SECOND) OF TORTS, held that an individual is entitled to protection from mental distress directly caused

by wanton and outrageous conduct. 437 Pa. at 378, 263 A.2d at 121. Comment d to Section 46 explains:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Other jurisdictions have allowed a cause of action to go forward in situations involving racial epithets. In *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 86 Cal.Rptr. 88, 468 P.2d 216 (1970), the Supreme Court of California, en banc, permitted recovery for the intentional infliction of emotional distress against an employer whose superintendant directed racial slurs against a Black employee. The Court stated:

> Although the slang epithet "nigger" may once have been in common usage, along with such other racial characterizations as "wop," "chink," "jap," "bohunk," or "shanty Irish," the former expression has become particularly abusive and insulting in light of recent developments in the civil rights movement as it pertains to the American Negro.

88 Cal.Rptr. at 91, n. 4, 468 P.2d at 219, n. 4.

The majority would distinguish *Alcorn* on the basis that the plaintiff was accorded a protected status by virtue of his relationship as an employee of the defendant. Yet in the case *sub judice*, appellant was a business invitee of Zayre's Department Store, owed a heightened standard of care by the store. *Treadway v. Ebert Motor Co.*, 292 Pa.Super. 41, 436 A.2d 994 (1982) (business invitee may rely on duty of owner to keep premises safe and to warn of potential hidden perils).

In *Papieves*, our Supreme Court recognized that the intentional infliction of emotional distress is an evolving tort

and its scope has not yet been clearly defined. However, the principles cited above compel the conclusion that if appellee did engage in the conduct described in appellant's complaint, they could be held liable for emotional and mental distress suffered by appellant. This particular racial epithet is ripe with hundreds of years of meaning: its use in certain contexts is repugnant to contemporary social values. Simply put, it is an ugly reminder of man's inhumanity to man.

> Our Supreme Court wrote:

> We recognize that any extension of legal liability to acts which cause emotional distress is not without its problems. We also recognize that the law cannot serve to guarantee all men's peace of mind; as the late Judge MAGRUDER remarked, "Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be." (Magruder, "Mental and Emotional Disturbance in the Law of Torts", 49 Harv.L.R. 1033 (1936)).

> But this case is not in that category. There can be little doubt that mental or emotional disorders brought on by conduct such as that set forth in the complaint at bar may be every bit as real, every bit as debilitating as ailments which have more obviously physical causes. For this reason, the obvious and inherent difficulties of the proof, or disproof, of emotional distress and the measurement of damages for such injury are not adequate cause, standing alone, to deny recovery ...

> It goes without saying that in order to recover, a plaintiff asserting such a cause of action must be able to prove all the elements of his case by proper evidentiary standards.

The majority is incorrect in its statement that no other jurisdiction has recognized a cause of action for the intentional infliction of emotional distress in the context of racial

slurs. *See generally Amos v. Prom, Inc.,* 115 F.Supp. 127 (N.D.Iowa 1953) (black excluded from ballroom for racial reasons—cause of action for intentional infliction of emotion distress allowed to proceed); *Fisher v. Carrousel Motor Hotel, Inc.,* (Tex.), 424 S.W.2d 627 (1963) (damages permitted for mental suffering); *Ruiz v. Bertolotti,* 37 Misc.2d 1067, 236 N.Y.S.2d 854 (1962) (threats against "colored people"—damages for distress and emotional shock); *Browning v. Slenderella Systems of Seattle,* 54 Wash.2d 440, 341 P.2d 859 (1959) (damages for hurt feelings and embarrassment); *Odom v. East Avenue Corp.,* 178 Misc. 363, 34 N.Y.S.2d 312 (1942) (mental suffering due to restaurant's refusal to serve black patrons).[1] Further, contrary to the majority's opinion, *Alcorn* makes no suggestion that the court might not have allowed a cause of action to progress in a non-employer-employee context.

The development of the tort of the intentional infliction of emotional distress in Pennsylvania convinces me that appellant's claim should proceed to trial by a jury of her peers. In a case similar to this, the Third Circuit, applying Pennsylvania law, allowed recovery for a party's emotional distress upon an accusation of theft by a store security officer. *Kahle v. Glosser Bros., Inc.,* 462 F.2d 815 (3d Cir.1972). Should not the jury in this case be permitted to consider whether being publicly called a "nigger" is equally outrageous conduct? Pennsylvania has long recognized humiliation as compensible harm. *Connor v. Yellow Cab Co.,* 72 F.Supp. 442 (E.D.Pa.1947); *Little v. York County Earned Income Tax Bureau,* 333 Pa.Super. 8, 481 A.2d 1194 (1984).

In short, I am unable to conclude that a jury would not find appellee's conduct outrageous, atrocious and utterly intolerable in a civilized society. The case should be remanded for trial on the merits. *See Denenberg v. American Family Corp.,* 566 F.Supp. 1242 (E.D.Pa.1983).

**1.** In regard to the susceptibility of blacks to severe emotional distress, *see* Colley, Civil Actions for Damages Arising Out of Violations of Civil Rights (1965–66) 17 Hast.L.J. 189, 201.