## Naughton v. Mercy Hospital

*John M. McClure* and *Sharon Brass Corey,* for plaintiffs.

*John J. Aponick Jr.,* for Lenahan & Dempsey P.C. and Timothy Lenahan.

O'MALLEY, *J.,* October 17, 1989 — This matter is before us by reason of a suit brought by plaintiffs, John Naughton and Ann Naughton, his wife, against Mercy Hospital and a host of other defendants including Lenahan & Dempsey, P.C. and Attorney Timothy G. Lenahan. The suit involves certain physical and mental ailments allegedly inflicted upon Naughton by defendants through improper care or treatment of injuries received by him of a heart condition and injuries sustained by him in a motor vehicle accident while in the course of his employment with Mercy. These defendants that we are concerned with here are in the picture by reason of the attendant workers' compensation matter which Naughton instituted, the result of the accident.

It is averred that Lenahan & Dempsey, P.C. provides legal services to Mercy and defendant NRM, the latter Mercy's alleged compensation carrier. Defendant Lenahan, it is claimed, is employed by the legal firm of Lenahan & Dempsey, P.C. and, at the pertinent times, was acting for himself and as

the co-venturer and/or agent of defendants Mercy and NRM. Liability is sought to be imposed because of defendants' handling of the workers' compensation claim in conjunction with others, specifically that defendant law firm and Attorney Lenahan engaged in a conspiracy to deprive Naughton of monetary payment for medical treatment and intentionally harassed and abused him with the specific intention of inflicting emotional distress upon him.

Six counts are contained in the complaint and defendants are included in three of them: count IV — conspiracy; count V — intentional infliction of emotional distress; and count VI — loss of consortium. Defendants base their preliminary objections on two grounds, a demurrer and a motion for a more specific pleading. Defendants mention three items under demurrer:

(1) Paragraph 125, under count IV, which alleges that the wrongful acts and/or omissions of defendants were extreme and outrageous, foreseeable, and in reckless disregard of and/or recklessly indifferent to the rights and interest of Naughton. Punitive damages are asked for. Defendants say the complaint fails to set forth a claim for punitive damages because no facts are set forth therein which clearly demonstrate that defendants' conduct was so outrageous in character or extreme in degree as to go beyond all possible bounds of decency.

(2) Defendants argue that, in count V, it is alleged that their conduct was intentional and/or reckless and caused emotional distress and physical harm to Naughton while the complaint fails to allege a claim for intentional infliction of emotional distress since the facts set forth in it fail to demonstrate that the conduct of these defendants was so extreme and outrageous as to permit a recovery thereon.

(3) Defendants contend count IV of the com-

plaint, concerning conspiracy, fails to state a claim against them. They say the facts averred in the complaint are inadequate to state a cause of action for conspiracy between Lenahan, the firm and the client who determined to contest Naughton's workers' compensation claim. Under the topic of a motion for more specific pleading, defendants argue that the complaint, pointing to paragraphs 123 and 131, fails to sufficiently aver items of special damage for medical care, nursing care, medicine and hospital care which is contrary to Pa.R.C.P. 1019(f).

## *Demurrer*

While a pleading is construed strictly against the pleader, the party defending against the imposition of a demurrer is favored by the policy against the entry of a summary judgment of demurrer. *Comm. Shopping Centers v. Barnes Development Co.,* 56 Delaware Rep. 160 (1968). Since defendants have chosen to file preliminary objections in the nature of a demurrer, every material and relevant fact well-pleaded and every inference fairly deducible therefrom are to be taken as true. *Commonwealth v. Musser Forest Inc.,* 394 Pa. 205, 146 A.2d 714 (1958). A demurrer will not be sustained unless the law says with certainty that no recovery is possible. *Rok v. Flaherty,* 106 Pa. Commw. 570, 527 A.2d 211 (1987).

Plaintiffs' complaint begins with an identification of the parties with a section entitled "Facts" beginning at its paragraph 24. It is alleged that Naughton suffered an initial heart attack in 1982 and underwent medical treatment at Mercy which resulted in his recovery. Thereafter, in June 1984, he became employed by that hospital as an ambulance driver, security officer and emergency medical technician.

While so employed, he was involved in a motor vehicle accident on September 7, 1986. He alleges he incurred upper body injuries from the accident. He also avers that, after the accident, he suffered a series of myocardial infarctions; one on October 15, 1986, another on February 27, 1987, and a possible one on November 11, 1987.

Defendant, Lenahan & Dempsey, P.C., is identified as a law firm located in Scranton, Pennsylvania, engaged in the practice of law and providing legal services to, inter alia, defendants, Mercy Hospital and NRM; that attorney Lenahan is employed by the law firm and at all material times was acting for himself and as the co-venturer and/or agent of Mercy and NRM; that, because of injuries suffered in the motor vehicle accident, Naughton began to receive total disability payments from Mercy's workers' compensation carrier NRM; that on or about February 10, 1987, Dr. Samuel Todaro, an orthopedist and another defendant, gave as his opinion that Naughton's right shoulder was in a partially frozen condition; that on February 11, 1987, Naughton underwent emergency surgery to reconstruct an artery bypass; that subsequent to the myocardial infarction of February 27, 1987, Dr. Ruggiero, Naughton's family doctor and another defendant, diagnosed a torn right rotator cuff with concomitant chronic pain of right shoulder, elbow, wrist and hand; that subsequent to Naughton's infarction of October 15, 1986, he was diagnosed as suffering from C-3, 4, 5 and 6 cervical radiculopathy with concomitant chronic pain syndrome; that in early June 1987, plaintiffs' counsel notified counsel for NRM, defendant Lenahan, of the condition of Naughton's right arm and his claim for specific loss benefits under the Workers' Compensation Act and Lenahan was provided with "numerous medical

reports, all of which were generated by defendant Mercy's physicians, establishing total loss of use of [Naughton's] right arm"; that on or about June 15, 1987, Naughton received an orthopedic evaluation from Dr. A.G. Zale who had been hired by Attorney Lenahan and "who rendered a medical opinion not inconsistent with the numerous medical reports provided in support of plaintiff's claim by counsel for plaintiff"; that on or about August 24, 1987, Naughton came under the care of James F. McAndrew, Ph.D., licensed psychologist and director of the Department of Behavioral Medicine at the defendant Mercy who diagnosed him as suffering from chronic pain of the neck, back and right shoulder and depressive neurosis, said doctor immediately instituting a psychotherapy and chronic pain management program in which Naughton has continued to participate; that in correspondence to attorney Lenahan dated October 8, 1987, Naughton's counsel "again demanded, in light of the cumulative medical evidence, that specific loss benefits be paid to plaintiff," attorney Lenahan refusing and plaintiff then filing a petition for same with the Department of Labor and Industry on or about December 16, 1987; that on November 11, 1987, plaintiff suffered a possible myocardial infarction and Dr. Gerald Tracey (his cardiologist), on November 16, 1987 submitted a report in which he gave the opinion that "plaintiff suffered phenomenal stress" from the workers' compensation litigation; that the said stress might be triggering coronary spasms and that the same acted as a catalyst in Naughton's failure to recover and that Lenahan, Mercy and NRM were informed of this opinion; that after the above petition was filed, attorney Lenahan notified Naughton's counsel that the plaintiff and his lawyer should go through Lenahan and not

communicate with NRM "despite defendant NRM's position as coordinator of plaintiff's medical treatment"; that "[d]uring a January 1, 1988 telephone conversation counsel for plaintiff was informed by defendant Lenahan that he was 'weighing plaintiff's life expectancy' in his decision to grant plaintiff's demand for specific loss benefits"; that on or about January 21, 1988, Dr. McAndrew rendered an opinion which stressed that plaintiff was demonstrating severe emotional reactivity and cardiovascular symptomatology to what Naughton perceived to be harassment and procrastination by defendants Lenahan and NRM in the compensation proceeding but despite this opinion, "defendant Lenahan took no steps whatsoever to expedite the proceedings"; that on or about February 24, 1988, Dr. McAndrew notified NRM that Naughton was unable to adapt to his chronic pain syndrome and requested NRM to make a funding pre-determination for plaintiff to undergo testing at a chronic pain management center and that, despite repeated requests directed to defendants NRM and Lenahan, they have refused to pre-determine this finding and have failed to give any legal reason for their attitude; that "plaintiff has been unable to adapt to his chronic pain syndrome, but has nevertheless been denied by defendants Lenahan and NRM the treatment specifically prescribed by Dr. McAndrew" and "by their reckless delay or deliberate procrastination in failing to pre-determine funding for said treatment [they] have prevented plaintiff from seeking other funding for same"; and that the workers' compensation litigation has gone on despite the failure of defendants NRM and Lenahan to provide Naughton with a medical opinion "to support their contest of plaintiff's legitimate claim for specific loss benefits and; that [these defendants] have not, to this

day offered any explanation or reason for their failure to answer the multiple requests ... for pre-determination of funding for chronic pain testing and treatment."

The brief filed by defendants only loosely follows the preliminary objections they have set forth. Basically, under their demurrer they argue (1) that attorney Lenahan was just doing his job in representing Mercy and NRM in the compensation matter and therefore these defendants cannot be held liable to Naughton so long as they were serving the interests of their clients; (2) that, under count V, even accepting plaintiff's allegations as true, the complaint fails to state a cause of action for intentional infliction of emotional distress; and (3) that the request for punitive damages set forth in paragraphs 125 (count IV — conspiracy) and 133 (count V — intentional infliction of emotional distress) are not sufficiently supported by pleaded facts and inferences that can be deduced therefrom both with regard to attorney Lenahan's conduct and the alleged conspiracy.

Taking all well pleaded material facts as well as all inferences therefrom as admitted for the purpose of its consideration, we do not believe the granting of a demurrer is warranted here. *Commonwealth, Dept. of Transportation v. Bethlehem Steel Corp.*, 33 Pa. Commw. 1, 380 A.2d 1308 (1977).

## I

Although not generally liable for negligence, an attorney is personally liable to a third person sustaining injury in consequence of his wrongful acts or improper exercise of authority where he has been guilty of fraud or collusion, or of a malicious or tortious act. The mere fact that one is an attorney

acting in a professional capacity does not immunize him from responsibility for his wrongful acts. An attorney is liable where he and his client fraudulently conspire to do an illegal act, or where he acts dishonestly with some sinister view or for some improper purpose of his own which the law considers malicious. 7A C.J.S. Attorney & Client, §142. If an attorney is actuated by malicious motives or shares the illegal motives of his client, he may be personally liable with the client for damage suffered by a third person as a result of the attorney's actions. 7 Am. Jur. 2d Attorneys at Law, §233; *Smith v. Griffiths,* 327 Pa. Super. 418, 476 A.2d 22 (1984). An attorney is not liable with his client unless it can be shown that he has gone beyond the strict law of his duty. *Stein v. Schmitz,* 61 A.2d 260 (N.J. 1948).

The law on this subject was clearly spelled out in *Adelman v. Rosenbaum,* 133 Pa. Super. 386, 3 A.2d 15 (1938) which involved both the charge of malicious abuse of legal process by an attorney and a claim for punitive damages.

"The defendant cannot invoke the plea of privilege as an attorney acting for a client. The plaintiff's evidence, accepted by the jury, disclosed malice, and malicious action is not sheltered by any privilege. An attorney is personally liable to a third party when he is guilty of fraud, collusion, or a malicious or tortious act, and he is liable, as anyone else, when he encourages and induces another to commit a trespass."

So, an attorney is personally liable to a third party who sustains an injury in consequence of his wrongful act or improper exercise of authority where the attorney has been guilty of fraud or collusion or of a malicious or tortious act, or where the conduct of the attorney extends beyond the scope of his honorable employment. 7A C.J.S., §142. An attorney at

law who is an officer of the courts, of all persons, should not be allowed to run rampant over the rights of others. *Haggerty v. Moyerman,* 321 Pa. 555, 184 Atl. 654 (1936).

Matters are still in early days in this case and whether the allegations will ultimately prove true is something else. However, they are serious and, as they are spelled out in the complaint, there is enough to defeat the requested demurrer.

For the argument that plaintiffs have not made out a charge of conspiracy, attention is directed to the discussion in the earlier opinion of this court regarding the Mercy Hospital and its employees. It is alleged that beginning on or about September 7, 1986 and continuing to the present, certain defendants, Attorney Lenahan with his firm among them, acting individually and in concert as co-conspirators met and spoke by telephone and in person embarking on a scheme to (a) deprive Naughton of the medical treatment, care and monetary payment to which he was entitled and (b) to cover up, hide, and/or conceal Mercy's wrongful and/or negligent acts which had caused his second and third heart attack and (c) to discourage Naughton from filing a claim for malpractice and (d) to otherwise harm him. The aforesaid pleading is sufficient to escape the demurrer.

## II

These defendants next take issue with plaintiffs' claim for the intentional infliction of emotional distress arguing that section 46 in the Restatement (Second) of Torts (1965) has not been adopted in Pennsylvania and that, even if it has, the complaint does not allege the degree of severity necessary to constitute a cause of action.

It is true that confusion does exist about whether section 46 per se does obtain in Pennsylvania. The federal and Pennsylvania Superior Courts determined that it did and proceeded on that assumption. See *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3d Cir. 1979); *Banyas v. Lower Bucks Hospital,* 923 Pa. Super. 122, 437 A.2d 1236 (1981). Then, in 1987, came the Pennsylvania Supreme Court case of *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988 (1987). Initially in the opinion, the court pointed out that it had acknowledged but never had occasion to specifically adopt section 46 as the law in Pennsylvania and that, because the evidence adduced in that matter did " . . . not establish a right of recovery under the terms of the provision as set forth in the Restatement . . . " the court left to another day the question of the viability of section 46 in Pennsylvania. Later in the opinion the court points out that it is this section 46 upon which the plaintiffs therein were relying and quotes extensively from it including the Restatement's definition of extreme and outrageous conduct and also the following:

"§46. *Outrageous Conduct Causing Severe Emotional Distress* —

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Kazatsky, supra.*

Still further on the court makes the statement that:

"[T]he requirement of some objective proof of severe emotional distress will not present an unsurmountable obstacle to recovery. Those truly damaged should have little difficulty in procuring reli-

able testimony as to the nature and extent of their injuries. We therefore conclude that if section 46 of the Restatement is to be accepted in this commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." *Kazatsky, supra.*[*]

From this decision and others we may conclude that, although section 46 has never been adopted here by name, its spirit does wander abroad in this commonwealth, at least if the emotional distress intentionally inflicted manifests itself in some physical disorder. See *Dawson v. Zayre Dept. Stores,* 346 Pa. Super. 357, 499 A.2d 648 (1985), "An action for the intentional infliction of emotional distress has been recognized in Pennsylvania." *Dawson* at 364, 499 A.2d at 651, citing cases. (Olszewski, *J.,* dissenting); *Daughen v. Fox,* 372 Pa. Super. 405, 359 A.2d 858 (1988) ("Assuming that section 46 of the Restatement (Second) of Torts were to become the law of Pennsylvania. . . . "); *Rose v. Wissinger,* 294 Pa. Super. 265, 439 A.2d 1193 (1982); *Boarts v. McCord,* 354 Pa. Super. 96, 511 A.2d 204 (1986).

Believing that an action for intentional infliction of emotional distress does exist in Pennsylvania, we also believe that such a cause of action has been set forth in the complaint.

The rule in this area is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. The extreme and outrageous

---

[*]Despite this language, the Superior Court, in *Ford v. Isdaner,* 374 Pa. Super. 40, 542 A. 2d 137 (1988) states that *Kazatsky* "makes clear" that the tort of intentional infliction of emotional distress is not recognized in Pennsylvania. The decision then goes on to say that the court is not " . . . inclined to embrace section 46 of the Restatement under the circumstances of the instant case."

nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives the defendant actual or apparent power to damage the plaintiff's interests. The result is something like extortion. From a position of power, the defendant employs outrageous bullying tactics to gain his ends. Still another basis on which outrageous conduct can be found from the defendant's behavior is the latter's knowledge that the plaintiff is especially sensitive, susceptible and vulnerable to injury through mental distress from the particular conduct. Sick people fall into this category. Generally speaking, it has been noted that in the great majority of the cases allowing recovery, the genuineness of the mental disturbance has been evidenced by resulting physical illness of a serious character. Prosser and Keeton on Torts at 60-4. (5th ed. 1984)

In the instant case, plaintiffs have alleged that Naughton, in ill health to begin with, has suffered further exacerbation of his heart condition because of Attorney Lenahan's conduct in the workers' compensation proceeding. Where the plaintiff produces a prima facie case, the question of whether the defendant's conduct was sufficiently outrageous is for the jury. *Martin v. Municipal Publications*, 510 F.Supp. 255 (E.D. Pa. 1981).

## III

These defendants demur to plaintiffs' claim for punitive damages against them. They argue that the court cannot conclude that plaintiffs have stated a prima facie case which would warrant a jury determination that attorney Lenahan's conduct, as stated in the complaint, was done with a reckless indifference so great as to make it highly probable

that harm to Naughton would follow. We do not agree.

Pennsylvania has embraced the guidelines of section 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages. They may be awarded for conduct that is outrageous because of the defendant's evil motive or his reckless indifference to the rights of others. Punitive damages must be based on conduct which is malicious, wanton, reckless, willful or oppressive. Further, one must look to the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties. *Feld v. Merriam,* 314 Pa. Super. 414, 485 A.2d 742 (1984).

Whether or not punitive damages on the theory of outrageous conduct can be proved is not in issue at this time. Rather the issue which we must decide is whether the allegations with respect to punitive damages are sufficient. *Dunkovitch etc. v. Robbins & Myers Inc. et al.,* 59 Washington Rep. 101 (1978). We have set forth the allegations pertaining to defendants' conduct prior hereto. Plaintiffs allege that "[t]he wrongful acts and/or omissions . . . were extreme and outrageous, foreseeable, and in reckless disregard of and/or recklessly indifferent to the rights and interests of plaintiff." Two standards must be kept in mind concerning a demurrer. First, specific particularity is not required, but rather, based upon the facts averred, whether the law says with certainty there can be no recovery; and second, where a doubt exists as to the sustaining of a demurrer, it should be resolved in favor of overruling it. *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970). There is no certainty here that no recovery may be possible. Hence, the demurrer as to punitive damages must be overruled.

## *Motion for a More Specific Pleading*

These defendants move for more specific pleading under Pa.R.C.P. 1019(f) claiming that the complaint's paragraphs 123 and 131 fail to sufficiently aver items of special damage for medical care, nursing care, medicine and hospital care. This motion will be denied.

Naughton's maladies are set forth in the complaint and are included in the subject counts through incorporation. Paragraphs 123 and 131 relate that because of the wrongful acts and/or omissions of defendants, Naughton has required, does require and will, in the future, require additional hospital care and other medical care and attention and, likewise, has been, is, and will be obliged to expend sums of money for medical care.

A complaint in trespass need not, under rule 1019(f), state the nature of the injuries complained of more specifically than reasonably to advise the defendant of the nature thereof, nor need it specify when and to whom the medical expenses claimed were paid. *Davis v. Carr,* 61 D.&C. 479 (1948). If defendants wish more information along these lines, discovery is available. See *First Pennsylvania Bank v. Seiser,* 9 D.&C. 3d 89 (1979).

## ORDER

Now, October 17, 1989, for the reasons set forth in the accompanying opinion, it is hereby ordered that defendants', Lenahan and Dempsey, P.C. and Timothy G. Lenahan, Esq., preliminary objections in the nature of a demurrer and motion for a more specific pleading are denied; said defendants will be granted 30 days to file responsive pleadings to the complaint filed herein.