OPINION BY MURRAY, J.:
Reynold John (Appellant) appeals from the order of August 31, 2018 sustaining the preliminary objections of Philadelphia Pizza Team, Inc. d/b/a Domino's Pizza and Hardip Kaur (Domino's), and dismissing Appellant's complaint. We affirm.
The trial court summarized the factual and procedural background as follows:
On July 21, 2017, [Appellant] ordered a pizza for delivery from [Domino's]. When the pizza was delivered, [Appellant] was dismayed to find it burnt. [Appellant] took the pizza to the Domino's restaurant and demanded a refund from a store employee, Defendant Hardip Kaur ("Kaur"). According to the police report, [Appellant] snapped a photo of Kaur. Kaur then refused to provide [Appellant] a refund until he deleted the photo because it was against Kaur's religion to have her photo taken. An argument ensued, and Kaur called [Appellant], who is African-American, a "nigger."
Prior to initiating the instant lawsuit, on March 5, 2018, [Appellant] filed a pro se complaint (docket no. 180300056) against "Domino's Pizza" claiming negligent training, supervision and hiring and intentional infliction of emotional distress ("IIED"). On March 24, 2018, in response to [Appellant's] motion to proceed in forma pauperis , Hon. Idee C. Fox issued an order granting the IFP but also dismissing the action sua sponte under Pa.R.C.P. 240(j)(1) for failure to state a claim upon which relief can be granted. That order cited the analogous case Dawson v. Zayre Department Stores , 346 Pa.Super. 357, 499 A.2d 648 ( [ ] 1985), discussed in greater detail below. [Appellant] did not appeal Judge Fox's order.
On [May] 11, 2018, [Appellant], having retained counsel, filed a complaint in the instant action, claiming negligent training, supervision and hiring, IIED, and negligent infliction of emotional distress ("NIED"). By stipulation of [the] parties, [Appellant] filed an amended complaint on July 2, 2018. The amended complaint contained the same claims but added an introductory paragraph and some additional details. [Appellant] demanded compensatory damages in excess of the arbitration limit as well as punitive damages. [The case was assigned to the Honorable Arnold L. New.]
On July 23, 2018, [Domino's] filed preliminary objections in the nature of a demurrer requesting dismissal based on Judge Fox's order and Dawson . The Court issued an order on August 31, 2018 sustaining the objections and dismissing the case. [Appellant] filed a notice of appeal on September 28, 2018. In *382 his Pa.R.A.P. 1925 concise statement of errors, [Appellant] claims this [c]ourt erred by dismissing the case "pursuant to the doctrines of 'law of the case', 'coordinate jurisdiction,' 'collateral estoppel,' and 'res judicata' " because Judge Fox's order was issued without giving [Appellant] the opportunity to be heard or in response to preliminary objections. [Appellant] further claims this [c]ourt erred in sustaining [Dominos'] preliminary objections because "this particular racial epithet, which was used against [Appellant] with such hate and frequency that the police noted it on their report, is ripe with hundreds of years of negative and menacing meaning."
Trial Court Opinion, 11/2/18, at 1-3 (footnotes omitted).
At the outset, we note that Appellant appeals from the order entered on August 31, 2018 by the Honorable Arnold L. New, which dismissed the underlying complaint filed by Appellant on May 11, 2018. As Judge New observed in his opinion, Appellant had filed a prior complaint, pro se , which another judge, the Honorable Idee C. Fox, dismissed on March 24, 2018. Appellant did not file an appeal to the March 24, 2018 dismissal by Judge Fox, and that prior action is not on or related to this docket. However, after Judge New entered the August 31, 2018 order dismissing the complaint on the underlying docket - and notice was given pursuant to Pa.R.C.P. 236 - Appellant, on September 5, 2018, filed a praecipe to reinstate complaint and an amended complaint. Then, on September 28, 2018, Appellant filed a notice of appeal from the August 31, 2018 order. The filing of the appeal divested the trial court of jurisdiction. See Pa.R.A.P. 1701 ("after an appeal is taken ... the trial court ... may no longer proceed further in the matter"). Nonetheless, the Honorable Linda Carpenter, on November 8, 2018, entered an order dismissing Appellant's amended complaint filed on September 5, 2018. That order was a legal nullity. We have explained:
Rule 1701 cannot be overlooked. The trial court's order ... is a nullity because it was entered at a time when the trial court did not have jurisdiction-i.e. , the order was entered after [appellant] filed [the] first notice of appeal with this Court and before the record was remanded to the trial court pursuant to Pa.R.A.P. 2591(a). Rule 2591(a) indicates that Rule 1701(a) "shall no longer be applicable to the matter" once the record is remanded. Since the record had not yet been remanded at the time the trial court entered its order, ... the trial court did not have jurisdiction to enter such order and, therefore, such order is void.
Bell v. Kater , 839 A.2d 356, 358 (Pa. Super. 2003) (emphasis in original).
Accordingly, we proceed to address the appeal before us from the August 31, 2018 order. Appellant phrases his issue as follows:
Did the Trial Court err in holding that [Dominos'] actions in repeatedly calling an African-American customer, who has asked for a refund, a "nigger" merely constitutes naming [sic ] calling from which no recovery may be had because "being offended over the use of a racial slur in an argument is simply not enough to establish liability under any ... theory?
Appellant's Brief at 4.
Appellant acknowledges this Court's holding in Dawson , 346 Pa.Super. 357, 499 A.2d 648. Nonetheless, Appellant states that "it has been 30 years since the Dawson opinion," and argues the trial court's application of Dawson is "outdated." Id. at 11, 20.
*383 Our standard of review from the trial court's order granting Dominos' preliminary objections in the nature of a demurrer and dismissing Appellant's complaint is well-settled. We must:
determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.
Estate of Denmark ex rel. Hurst v. Williams , 117 A.3d 300, 305 (Pa. Super. 2015) (citations omitted).
It is undisputed that the trial court based its ruling on this Court's decision in the Dawson case. The facts and procedural posture in Dawson are analogous:
Appellant entered Zayres Department Store intending to pick up a lay-away item. She became involved in a dispute with a store employee over the lay-away ticket. During the argument, the employee called the Appellant a "nigger". Appellant filed a complaint in trespass alleging that she suffered severe emotional distress as a result of this incident: wounded feelings; humiliation; physical harm; and that she cried and was unable to gain her composure for one-half hour.
Dawson , 499 A.2d at 648-49. The trial court in Dawson held that the actions of Zayre's employee "did not rise to the level of extreme and outrageous conduct required to sound in tort." Id. at 649. Accordingly, the trial court granted Zayre's preliminary objections in the nature of a demurrer and dismissed the appellant's complaint.
On appeal, this Court emphasized that it "by no means condone[d] the derogatory and offensive language used by [Zayre's] employee," and understood "Appellant's rightful resentment." Id. Nonetheless, we recognized the applicable law:
Liability for intentional infliction of emotional distress is limited to those cases in which the conduct complained of is extreme and outrageous. Jones v. Nissenbaum , Rudolph and Seidner , 244 Pa.Super. 377, 368 A.2d 770 (1976). Further, it is for the court to determine, in the first instance, whether the defendant's conduct can reasonably be regarded as so extreme and outrageous so as to permit recovery. Restatement (Second) of Torts, § 46, comment (h) (1965).
Conduct which does not meet the requisites for liability is described in comment (d) of the Restatement (Second) of Torts § 46:
The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in *384 every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.
Dawson , 499 A.2d at 649.
We also referenced the following illustration from the Restatement (Second) of Torts:
4. A makes a telephone call but is unable to get his number. In the course of an altercation with the telephone operator, A calls her a God damned woman, a God damned liar, and say[s] that if he were there he would break her God damned neck. B suffers severe emotional distress, broods over the incident, is unable to sleep, and is made ill. A's conduct, although insulting, is not so outrageous or extreme as to make A liable to B.
Restatement (Second) of Torts ..., § 46, comment (d) illustration 4.
Id.
Applying the above authority, this Court in Dawson explained:
This is not a case involving continuous malicious actions. See: Bartanus v. Lis , 332 Pa.Super. 48, 480 A.2d 1178 (1984). Nor is this a case where there was a special relationship between the parties. See: Restatement (Second) of Torts ..., § 48. Likewise the situation described herein is not one in which the actor knew of the other's susceptibility to emotional distress, by reason of some physical or mental condition or peculiarity. See: Restatement (Second) of Torts, supra, § 46, comment (f); Zalnis v. Thoroughbred Datsun Car Co. , --- Colo.App. ----, 645 P.2d 292 (1982). Rather, this case involves a party who during the course of a disagreement characterized another with an offensive term. The law does not invoke liability in a situation where, without other aggravating circumstances, one hurls an epithet at another during the course of a disagreement.
Dawson , 499 A.2d at 650. We opined: "Clearly the law cannot serve to redress all indignities." Id. at 649.
In the 34 years since this Court decided Dawson , there has been only one instance of negative treatment by a court in this Commonwealth. See McClease v. R.R. Donnelley & Sons Co. , 226 F.Supp.2d 695 (E.D. Pa. 2002). McClease is a federal trial court case and is therefore not authoritative; also, it is factually distinguishable. However, given the scarcity of case law on this issue, we address it. McClease involved a discharged African-American employee who sued his employer and alleged, inter alia , intentional infliction of emotional distress (IIED) as a result of his managers engaging in "an unceasing farrago of racial epithets." Id. at 698. In declining to dismiss the former employee's IIED claim against his former employer, the federal district court stated:
The defendants also seek dismissal of McClease's state law claim for intentional infliction of emotional distress ("IIED"). Pennsylvania law imposes liability on "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress...." Shaner v. Synthes (USA) , 204 F.3d 494, 507 (3d Cir.2000) (quoting Hoy v. Angelone , 554 Pa. 134, 720 A.2d 745, 753 (1998) ). To state a claim, physical harm must accompany the emotional distress. Armstrong v. Paoli Memorial Hosp. , 430 Pa.Super. 36, 44-45, 633 A.2d 605 (1993).
The defendants argue that the claim must be dismissed because the plaintiff has failed to allege physical harm. They *385 seem to have overlooked Pennsylvania cases that have held that physical harm includes "ongoing mental ... and emotional harm." Id. at 45, 633 A.2d 605 (quoting Love v. Cramer , 414 Pa.Super. 231, 238, 606 A.2d 1175 (1992) ). McClease's complaint alleges that he has suffered "serious emotional harm, psychological distress and damage." Am. Compl. ¶ 197.
Bearing in mind that the Pennsylvania Supreme Court has not opined on this issue, it is a close question whether McClease has alleged sufficient facts to state a claim for IIED. Viewing the factual allegations in the complaint in the light most favorable to McClease, however, we conclude that he has pleaded sufficient facts to put the defendants on notice of the essential elements on his IIED claim.
The defendants also contend that McClease fails to state an IIED claim because racial harassment and epithets do not constitute "extreme and outrageous conduct." We hesitate to predict that the Pennsylvania Supreme Court would hold that racial epithets and harassment can never be the basis of an IIED claim under Pennsylvania law. The Pennsylvania Supreme Court has never examined this question, and in fact only one published lower court decision has considered whether racial slurs constitute extreme and outrageous conduct. In Dawson v. Zayre Dept. Stores , 346 Pa.Super. 357, 499 A.2d 648 (1985), a store employee used a racial epithet during a dispute with a customer over a layaway ticket. The Superior Court held that, given the brevity of the encounter and the relationship between the parties, the employee's behavior did not rise to the level of extreme and outrageous conduct. Id. at 360, 499 A.2d 648. The panel expressly distinguished the case from those involving "continuous malicious actions" or a "special relationship between the parties." Id. at 361-62, 499 A.2d 648 (citing Bartanus v. Lis , 332 Pa.Super. 48, 480 A.2d 1178 (1984) and Restatement (Second) of Torts § 48 ).
The amended complaint here alleges both continuous malicious conduct and a special relationship between the parties. Before we can determine whether the defendants' alleged conduct is extreme and outrageous, McClease should have the chance to develop the factual record of his case. We therefore deny the defendants' motions to dismiss [the IIED claim].
McClease , 226 F.Supp.2d at 702-03 (emphasis added).
Consistent with the foregoing, and upon careful review, we discern no error of law by the trial court. Appellant's case, like Dawson , "involves a party who during the course of a disagreement characterized another with an offensive term." See Dawson , 499 A.2d at 650. The trial court explained:
The instant matter is indistinguishable from the fact patterns in Dawson and illustration 4 [of the Restatement (Second) of Torts § 46, comment (d) ]. In each case, the plaintiff and a stranger quarreled, resulting in the use of an offensive personal insult. Likewise, in each case, the plaintiff had the right to be deeply offended and upset by the situation, but is not entitled to money damages. As the Superior Court wrote in Dawson , "Clearly the law cannot serve to redress all indignities." 499 A.2d at 649.
In response to the preliminary objections, [Appellant] argues Dawson "was decided over 30 years ago" and, citing the dissent, points out "other jurisdictions have allowed a cause of action to *386 go forward in situations involving racial epithets or what we now widely recognize as hate speech." However, [Appellant] does not cite to any case law, either in this Commonwealth or elsewhere, decided subsequent to Dawson . [Appellant's] argument is a request to follow the dissent in Dawson . This [c]ourt declines to do so.
[Appellant] claims Dominos is liable for negligent training, supervision and hiring, IIED, and NIED. Being offended over the use of a racial slur in an argument is simply not enough to establish liability under any of those theories. Despite Kaur's inappropriate behavior, this [c]ourt properly dismissed this matter pursuant to the clear holding in Dawson .
Trial Court Opinion, 11/2/18, at 4-5 (footnote omitted). The court also stated that a hearing was not warranted because "this case is so factually aligned with Dawson ." Id. at 5 n.4.
We agree with the trial court. This Court recently reiterated:
[O]ur role as an intermediate appellate court is clear. "It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court." Moses v. T.N.T. Red Star Exp. , 725 A.2d 792, 801 (Pa. Super. 1999). It is well-settled that "the Superior Court is an error correcting court and we are obliged to apply the decisional law as determined by the Supreme Court of Pennsylvania." Commonwealth v. Montini , 712 A.2d 761, 769 (Pa. Super. 1998).
Matter of M.P. , 204 A.3d 976, 981, 2019 WL 850581 at *2 n.2. (Pa. Super. 2019). Further, we "underscore[d] our role as an intermediate appellate court," recognizing that our decisions "may not be disposition-driven[, and w]e are bound by decisional and statutory legal authority, even when equitable considerations may compel a contrary result." Id. Accordingly, we emphasize that any decisional change must originate from our Supreme Court and any statutory change must come from the legislature.
For these reasons, we discern no error by the trial court in sustaining Dominos' preliminary objections and dismissing Appellant's complaint.
Order affirmed.